IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOYCE HUTCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-6447 |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO BOARD OF EDUCATION | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, JOYCE HUTCHENS ("HUTCHENS"), by and through her attorney, complains against DEFENDANT, Chicago Board of Education ("BOARD"), as follows:

### I. NATURE OF ACTION

1. This is an action brought against Defendant under 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §1983, the 1964 and 1991 Civil Rights Acts, and the Constitution of the United States of America, to recover actual damages caused by Defendant's retaliation against the Plaintiff for complaining of discrimination and attempting to redress her grievances through the filing of 09 C 7931, for an award of punitive damages, injunctive relief, and for such other relief as this Court deems proper, including, but not limited to, an award of attorney's fees under 42 U.S.C. § 1988. This action also seeks declaratory and injunctive relief from retaliation in violation of 740 ILCS 174/15 (2013) pursuant to this Court's pendant jurisdiction. Plaintiff demands trial by jury.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

1

3. Venue is appropriate under 28 U.S.C. § 1391, because the Defendant conducts business in and the retaliation about which Plaintiff complains occurred in the Northern District of Illinois.

4. The Plaintiff is a resident of the State of Illinois.

5. At all times relevant to this cause of action, Defendant BOARD principally engaged in the business of educating children in the City of Chicago, in the Northern District of Illinois, through the provision of educational services and facilities. The BOARD is a state actor, acting under the color of state law and employs fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year in an industry affecting commerce.

6. On April 17, 2013, HUTCHENS timely filed a Charge of Discrimination with the EEOC. Said charge is attached hereto as Exhibit "A."

7. Because the BOARD is a branch of local government, as required, HUTCHENS requested a Notice of Right to Sue from the U.S. Department of Justice on her retaliation charge, which is dated June 6, 2013 and was received on or about the following week. It is attached as Exhibit "B."

## FACTS

8. HUTCHENS began working for the BOARD in 1994 as a high school English/Language Arts teacher.

9. In June 2009, HUTCHENS, who is Black, was laid off from her position as Curriculum Facilitator with the BOARD'S Professional Development Unit and was immediately replaced by Deborah Glowacki, a Caucasian.

10. On December 22, 2009, HUTCHENS brought a seven count lawsuit against the BOARD and other individuals based upon racial and age discrimination, retaliation, and intentional infliction of emotional distress. Said lawsuit was assigned Case Number 09 C 7931, a copy of which is attached hereto as Exhibit "C."

11. Soon after HUTCHENS's 2009 termination from the BOARD, HUTCHENS applied for numerous positions with the BOARD for which she was highly qualified. However, she failed to secure even an interview for a position.

12. Despite her excellent credentials and despite being contacted to interview for numerous non-BOARD permanent positions, HUTCHENS has been unable to acquire a single full-time permanent position during the more than four-year period since her termination.

13. After such interviews would reach the reference checking stage, HUTCHENS would never hear from the prospective employers again.

14. Since her June 2009 layoff, HUTCHENS has been hired by three BOARD charter schools to serve in temporary and underemployed capacities. Neither of the three charter schools contacted the BOARD for references or employment verification for HUTCHENS.

15. Also since her June 2009 layoff, HUTCHENS has been hired by numerous other organizations to serve in temporary and significantly underemployed capacities. Neither of these organizations contacted the BOARD for references.

16. Despite having two master's degrees and a national teaching certification, HUTCHENS has, on numerous occasions, worked for little more than minimum wage, simply to support herself because she was unable to acquire employment which would pay her more.

17. Because of the negativity surrounding the BOARD's employment verification and references for her, HUTCHENS has had such a difficult time acquiring employment over the

3

more than four years since her layoff, only because of the assistance of family and friends has she been able to support herself

18. In November 2012, HUTCHENS was hired by Truman Middle College, a BOARD charter school, to serve in a part-time tutoring and substitute teaching capacity. HUTCHENS successfully completed her drug test and new employee orientation and had already begun serving in her knew position while Truman awaited her references from the BOARD. However, once Truman received references for HUTCHENS from the BOARD, she was never allowed to return to work.

19. In April 2013, HUTCHENS filed an EEOC charge of retaliation against Truman College. After Truman learned of the charge, Truman immediately began contacting HUTCHENS to return to work.

20. Because of the behavior by Truman College, HUTCHENS suspected she was and had for years been blackballed to prospective employers by the BOARD. In March 2013, HUTCHENS hired Allison & Taylor, Inc, an employment verification and reference checking firm, to conduct verification and reference of HUTCHENS' employment with the BOARD.

21. According to the BOARD's employment verification form, "requests will be processed and mailed within three to five business days" after the BOARD receives a signed and notarized authorization form the employee or former employee. A copy of the verification form is attached as Exhibit "D."

22. Allison & Taylor received HUTCHENS' signed and notarized authorization form on March 29, 2013.

23. "Maria," a BOARD Employee Records Department employee, acknowledged receiving the form from Allison & Taylor on March 29, 2013.

4

24. On April 10, 2013, Maria informed Allison & Taylor that Gina Marlow was handling HUTCHENS' verification request, was doing "research" on it, and "it could take 10 days."

25. There was no reason for anyone at the BOARD to conduct "research" regarding HUTCHENS' employment and this reference raised questions to seasoned prospective employers about HUTCHENS.

26. Allison & Taylor responded to Maria that it had already been over 10 days since the BOARD had received HUTCHENS' employment verification request.

27. On April 12, 2013, Allison & Taylor noted on their verification checking form:

> We are closing out this case, as it is apparent that the reference is not motivated to respond to our messages or provide the information as requested.

Allison and Taylor also stated:

> Please note that we have made every effort to obtain information regarding your previous employment there, have faxed the information as requested by them and have attempted to contact them on the status of the information due to me. Regrettably, they have not seen fit to mail, call or fax back the information and ongoing efforts on our part may simply antagonize them. The conclusion we must draw is that they have no desire or intention of speaking with us, or with any prospective employer who attempts to contact them regarding your references. While we are constrained to close your case, note again that the reference's refusal to speak with us (or by extension, with a prospective employer) is instructive in itself.

A copy of Allison & Taylor's entire report is attached hereto as Exhibit "E."

28. Upon information and belief, the conduct the BOARD exhibited with Allison & Taylor is indicative of the same behavior the BOARD has repeatedly exhibited toward HUTCHENS' prospective employers since her June 2009 layoff.

29. HUTCHENS also believes that her inability to acquire a single permanent position, her extended periods of unemployment, and her current and multiple periods of

5

underemployment are all a direct result of the manner in which the BOARD has handled reference calls regarding her employment verification and work history.

30. In early January 2013, HUTCHENS sent to the U.S. Department of Justice, the Illinois States Attorney and the BOARD'S Inspector General, a letter, accompanied by several documents which appeared to depict a payroll fraud scheme involving BOARD employees.

31. Generally, HUTCHENS alleged that certain documents had been discovered during the discovery phase of HUTCHENS' December 22, 2009 lawsuit, in the personnel file of Deborah Glowacki, who had immediately assumed HUTCHENS' position after she was terminated.

32. The documents were brought to the attention of the BOARD during a March 2010 deposition which was conducted by HUTCHENS' former counsel.

33. One of the documents was an allegedly falsified and altered official employment form entitled Staffing Recommendation Form which reflected Glowacki's position as a "Teacher Training Specialist" position and was dated December 30, 2008.

34. On information and belief, the BOARD does not, did not at that time, and has never had a "Teacher Training Specialist" position.

35. Rather, the so-called "Teacher Training Specialist" position was classified as an A07 salary band.

36. The following day, after the salary band had been approved by the BOARD'S payroll department, a computerized data sheet surfaced which reflected that Glowacki was staffed as a Curriculum Facilitator, the actual position for which she had applied.

37. Job Bulletin No. 111, dated October 22, 2008 and advertising the Curriculum Facilitator indicates that the position is a Salary Band 6.

38. The Curriculum Facilitator's position had a salary band of A06. However, to inflate her salary, Glowacki was hired at the A07 salary band, and on information and belief, currently receives such salary, although her title remains Curriculum Facilitator. Although both positions clearly had different titles and salary bands, both reflected the position code of 243256.

39. In July 2013, HUTCHENS applied for a temporary consulting position with Briljent Corporation. Either Briljent or a reference checking firm they used contacted the BOARD for a reference. For the very first time since her more than four year layoff, and only after she filed her April 17, 2013 charge of retaliation with the EEOC, HUTCHENS was not held back from getting a position after the reference check. HUTCHENS continues to make far less money than she would have with many of the other employers for whom she would have worked but for the BOARD's unlawful actions.

## COUNT I – RETALIATION

40. Plaintiff incorporates ¶¶ 1-39 herein.

41. Based upon Plaintiff's filing and prosecution of *Hutchens v. Board of Education*, Case No. 09 C 7931, as well as HUTCHEN's opposition to unlawful discrimination, the BOARD has continuously retaliated against HUTCHENS, in violation of 42 U.S.C. Sec. 2000e-3(a) and the First Amendment to the United States Constitution, by not providing timely, professional reference and employment verification information which would allow her to acquire new employment.

42. But for HUTCHEN's prosecution of *Hutchens v. Board of Education*,

Case No. 09 C 7931, as well as HUTCHEN's opposition to unlawful discrimination, the BOARD would have provided to potential employers timely professional reference and employment verification information for HUTCHENS.

43. As a result of the discriminatory acts of the BOARD, HUTCHENS has suffered embarrassment, humiliation, emotional distress, and significant financial loss.

WHEREFORE, Plaintiff respectfully requests, as against the BOARD:

A. A permanent injunction ordering the BOARD to provide potential employers with timely, professional reference and employment verification information;

B. Compensatory damages in an amount in excess of $300,000;

C. Punitive damages as allowed by law;

D. All wages and benefits Plaintiff would have received but for the unlawful discrimination and retaliation, including pre-judgment interest;

E. An award of attorney's fees and costs and expenses of this litigation; and

F. Such other relief as law and justice allow.

### COUNT II – ILLINOIS WHISTLEBLOWER'S PROTECTION ACT
### 740 ILCS 174/15 (2013)

44. Plaintiff incorporates ¶¶ 1-39 herein.

45. As a direct result of HUTCHENS reporting the alleged payroll scam, as herein described, to the U.S. Department of Justice, the Illinois States Attorney and the BOARD's Inspector General, the BOARD continuously retaliated against HUTCHENS by not providing timely, professional reference and employment verification information which would allow HUTCHENS to acquire new employment.

46. As a result of the discriminatory acts of the BOARD, HUTCHENS has suffered embarrassment, humiliation, emotional distress, and significant financial loss.

A. A permanent injunction ordering the BOARD to provide potential employers with timely, professional reference and employment verification information;

B. Compensatory damages in an amount in excess of $300,000;

C. Punitive damages as allowed by law;

D. All wages and benefits Plaintiff would have received but for the unlawful discrimination and retaliation, including pre-judgment interest;

E. An award of attorney's fees and costs and expenses of this litigation; and

F. Such other relief as law and justice allow.

                                  Respectfully submitted,
                                  JOYCE HUTCHENS


                                  /s/ Deidre Baumann
                                  _____
                                  By: One of Her Attorneys

Baumann & Shuldiner
20 South Clark Street, Suite 500
Chicago, IL 60603

(312) 558-3119

9