IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE HUTCHENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13-CV-6447 ) |
| CHICAGO BOARD OF EDUCATION, | ) Judge Edmond E. Chang ) ) |
| Defendant. | ) ) |

**DEFENDANT BOARD'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT AND ADD LISA DREISHMIRE AS A DEFENDANT**

Defendant Board of Education of the City of Chicago (the "Board") files this Response to Plaintiff's Motion for Leave to Supplement Complaint and Add Lisa Dreishmire as a Defendant (the "Motion," Docket #33) and states:

**INTRODUCTION**

With just a few weeks remaining in the discovery period, Plaintiff seeks leave to assert five new claims against the Board and the Board's counsel for conducting discovery typical in any employment case. The Court should deny the Motion because: (1) Plaintiff's proposed claims are futile, even crediting her inaccurate description of the underlying facts; and (2) the proposed amendment would unduly prejudice the Board by delaying resolution of this case by several months, requiring assignment of new counsel for the Board and Counsel Dreishmire, new written discovery to Plaintiff and at least two third parties and additional depositions. The Board therefore asks this Court to deny the Motion.

**BACKGROUND FACTS**

A.  **Plaintiff's First Case Against the Board.**

Plaintiff sued the Board and two former supervisors on December 22, 2009, in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 09-CV-7931 (the "2009 Case"). She asserted various employment-related claims arising from her 2009 layoff

from the Board. (Docket #1 in 2009 Case) This Court granted summary judgment on all claims and denied Plaintiff's Motion to Alter Judgment. (Docket #75, 75-1 and 98 in 2009 Case) Plaintiff's appeal, pending as Case No. 13-3648 before the Seventh Circuit, is fully briefed and awaits a ruling.

Counsel Dreishmire first became employed by the Board in January 2013 and appeared in the 2009 Case on January 4, 2013. (Docket #87) At that time, Plaintiff's Motion to Alter Judgment was fully briefed, but had not yet been denied. (Docket #98) Counsel Dreishmire is now lead counsel for appellees in the pending appeal.

B.   **Plaintiff's Second Case Against the Board.**

Plaintiff filed this case in September 2013. (Docket #1) She alleges the Board retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq.* ("Title VII"), the First Amendment and the Illinois Whistleblower's Protection Act. (Docket #1) Assistant General Counsel Brian Flores initially served as primary counsel assigned to represent the Board.[1] (Docket #6, 7, 11)

On February 5, 2014, the Court encouraged the Board to begin third party discovery concerning the Board's response to any requests for employment references concerning Plaintiff. (Docket #16) After Plaintiff identified the third parties at issue, Counsel Flores issued multiple subpoenas to third party entities Plaintiff identified, including Briljent, in April 2014. (**Exhibit A**) The subpoenas were narrowly tailored, requiring only production of records "regarding any requests for references or verifications of employment concerning [Plaintiff] and any responses to same," between the Board and the third party from June 1, 2010 to the present. (**Exhibit A**) Though each subpoena, including that to Briljent, clearly indicates it relates to a lawsuit in which Plaintiff is suing the Board, Plaintiff's counsel raised no objection to their issuance. Plaintiff has not claimed the Briljent subpoena adversely affected her relationship with Briljent. In fact, she admits in her Motion

---

[1] Susan O'Keefe, who also filed an appearance for the Board, is the Deputy General Counsel in charge of the Board's federal litigation group; she filed an appearance solely for the purpose of remaining informed regarding the procedural status of the case and has had no active role in litigating the case.

2

and proposed Amended Complaint that Briljent contracted with her for additional work after receiving and responding to the subpoena.

Counsel Flores propounded Interrogatories and Requests for Production of Documents on Plaintiff on March 5, 2014. (**Exhibit B**) Both sets of discovery included requests for Plaintiff to sign and return an Educational and Employment Records Authorization (among other records authorizations). (**Exhibit B**) Plaintiff responded to the Requests for Production on July 1, 2014, and answered the Interrogatories on July 7, 2014. (**Exhibit C**) The delay was due at least in part to the withdrawal of Plaintiff's counsel and the Court's Order that the Board extend Plaintiff's time to respond to discovery due to her *pro se* status. (Docket #20, 25) Her discovery responses did not include any of the requested signed third party records authorizations.

Counsel Flores resigned his employment with the Board in July 2014 and the Court first recognized Counsel Dreishmire as lead counsel for the Board in this case on July 24, 2014. (Docket #28) After Counsel Dreishmire's appearance, the parties continued to engage in written discovery.

**C.    Plaintiff Consented to the Use of the Records Authorization About Which She Now Complains.[2]**

Plaintiff failed to fully respond to the Board's initial written discovery requests, so Counsel Dreishmire wrote her an August 8, 2014, letter explaining why she believed the responses to be deficient. (**Exhibit D**) She also scheduled a Rule 37 conference to discuss the deficiencies with Plaintiff. They conferred on August 12, 2014.

During the Rule 37 conference, Plaintiff and Counsel Dreishmire discussed, among other things, the Board's wish to issue third party subpoenas broader than those previously served (which were limited to communications between the Board and each entity regarding Plaintiff and did not encompass all of the entities' records concerning Plaintiff). (**Exhibit A**) So the Board could request

---

[2] Plaintiff's proposed pleading amendment would be futile and cause delay even if the Court credits her version of the facts underlying her proposed claims. However, for the Court's edification, the Board provides in this Response an accurate version of the underlying facts.

3

her full record from her post-Board sources of income, Plaintiff agreed to sign the Educational and Employment Records Authorization the Board had propounded with its written discovery requests (as well as the other requested authorizations). (**Exhibit E**) Plaintiff and Counsel Dreishmire discussed only two exceptions to the use of that authorization: (1) Plaintiff said she did not oppose the Board issuing a subpoena to City Colleges of Chicago; and (2) Plaintiff asked the Board not to request additional documents from Mirta Ramirez, a Chicago charter school, whether via subpoena or authorization. Mirta Ramirez is the only entity Plaintiff mentioned when discussing third parties with whom she did not wish the Board to conduct discovery.

Plaintiff signed and returned the authorizations to Counsel Dreishmire, including the Educational and Employment Records Authorization. (**Exhibits E, F**—omitting forms not at issue) That Authorization does not restrict the entities to which it may be provided. (**Exhibit F**) Plaintiff did not complete the "TO" line of the Authorization, in which she could have restricted the entities to whom the form could be forwarded. (**Exhibit F**) Instead, she wrote in her enclosure letter, "I am authorizing you to complete the forms with any necessary additional information." (**Exhibit E**)

Due to the press of an unusually heavy workload caused in part her federal litigation group having not yet replaced two of its attorneys who recently left the Board, Counsel Dreishmire was not able to immediately request records using Plaintiff's signed authorizations. On September 29, 2014, however, she began that process, using other authorizations Plaintiff signed to request social security and medical records from four entities. (**Exhibit G**, attachments omitted) On October 2, 2014, she then turned to the records related to Plaintiff's post-Board income, sending identical records requests (and Plaintiff's signed Educational and Employment Records Authorization) to each post-Board source of income Plaintiff identified in her Initial Disclosures (with the exception of City Colleges of Chicago, for which Plaintiff had agreed to issuance of a subpoena). (**Exhibits F, H** (attachments omitted) **and I**)

Briljent is among the entities Plaintiff identified in her Initial Disclosures and that was

4

Counsel Dreishmire's sole reason for sending that company a records request. When she sent the October 2, 2014, records request to Briljent, Counsel Dreishmire had not yet had an opportunity to review the Interrogatory answers Plaintiff now claims would have alerted her to Plaintiff's then-current relationship with Briljent. Plaintiff had provided those answers just a few weeks earlier.

In preparing the first of the eight records request letters, Counsel Dreishmire duplicated and revised a letter she had used to confer with Plaintiff regarding Plaintiff's contempt of a Protective Order in the 2009 Case.[3] (**Exhibit J**) Because the contempt issue relates to both of Plaintiff's cases against the Board, both were identified in that letter's "Re" line. (**Exhibit J**) When Counsel Dreishmire created the first records request letter by duplicating the letter related to contempt, she inadvertently failed to delete the reference to the 2009 Case from the "Re" line. (**Exhibit G**) Because that first letter was used to create the remaining seven letters, each of the eight letters included that reference in the "Re" line. (**Exhibits G and H**) Counsel Dreishmire did not intentionally refer to the 2009 Case in the records request letters and only became aware of that issue when Plaintiff raised it during the October 23, 2014, status on Plaintiff's Motion.

Counsel Dreishmire has never made a negative or untruthful statement concerning Plaintiff to Briljent. Nor did she have any motive other than the good faith pursuit of routine discovery related to this case, sought in her role as Board counsel in this litigation, in engaging in the communication with Briljent about which Plaintiff now complains. Neither the Board nor Counsel Dreishmire wish to interfere with Plaintiff's ability to earn income; to the contrary, it is in the Board's best interests that Plaintiff mitigate her alleged damages to the greatest extent possible.

**D.      Plaintiff's Motion to Add Claims and a Defendant.**

On October 15, 2014, Plaintiff moved for leave to amend her Complaint to assert the following additional claims: (1) Illinois common law intentional interference with contractual

---

[3] Plaintiff has indicated she will rely in this case on confidential documents produced in the 2009 case pursuant to a Protective Order which prohibits use of confidential documents in any other litigation. (**Exhibit J**)

relations (Count 3, Docket #36 at 1-9); (2) Title VII retaliation (Count 4, Docket #36 at 9-12); (3) Illinois common law intentional infliction of emotional distress (Count 5, Docket #36 at 12-14); (4) Section 1981 retaliation (Count 6, Docket #36 at 14-16); and (5) Section 1983 "Equal Protection Clause – Retaliation" (Count 7, Docket #36 at 16-18). While Plaintiff states in the Complaint that she asserts certain claims only against Counsel Dreishmire or against both Counsel Dreishmire and the Board, her "Prayer for Relief" on every claim includes a request for Court action against both the Board and Counsel Dreishmire. Therefore, for purposes of this Response, the Board will assume she intends to assert each new claim against the Board and Counsel Dreishmire.

**E.      Plaintiff's Motion Has Made It Impossible to Comply with the Discovery Deadline.**

The discovery deadline is November 28, 2014. (Docket #25) Although the Board would like to depose Plaintiff before that deadline, it has held off on scheduling that deposition pending the Court's ruling on Plaintiff's Motion so that it will not be necessary to redepose Plaintiff if the Court grants her Motion. However, the Motion will not be fully briefed until November 13, 2014, the timing of the Court's ruling on the Motion is unknown and significant scheduling complications have been created by the Board's upcoming move of its entire Central Office (including the Law Department) and long-planned vacation time that will take Counsel Dreishmire out of state for several days this month. In light of these circumstances, the Board respectfully requests that the Court extend the discovery deadline to at least two weeks following the current discovery deadline or this Court's ruling on the Motion, whichever is later. (The Board will file a separate motion requesting this relief if the Court wishes).

**F.      Plaintiff Likes to Blame Lawyers for her Troubles.**

Plaintiff has a history of blaming lawyers for her troubles. She filed an Attorney Registration and Disciplinary Commission ("ARDC") complaint against Sabrina Haake, one of the Board's counsel in the 2009 Case, complaining of Haake's alleged conduct related to that litigation. (**Exhibit L**) The ARDC investigated and dismissed the Complaint without further action. (**Exhibit M**)

Plaintiff has not pleaded any retaliation claim involving Counsel Haake. (Docket #1) However, she implies in both her discovery requests and responses that she believes Counsel Haake is responsible for the manner in which the Board did (or did not) respond to reference requests received in connection with Plaintiff's search for post-Board employment. (**Exhibit L**) Plaintiff also implies the Board should have severed its relationship with Counsel Haake (who most recently worked for the Board on a contract basis, not as a full-time employee) due to Plaintiff's ARDC complaint against her. (**Exhibit L**) Apparently, this is the result Plaintiff sought, which adds a layer of irony to her proposed claims.

**ARGUMENT**

Under Federal Rule of Civil Procedure 15(a), a district court may grant leave to amend pleadings and such leave "shall be freely given when justice so requires." *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999), citing FED. R. CIV. P. 15(a). However, such leave is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Feldman*, 196 F.3d at 793. The Court of Appeals will reverse a denial of a motion to amend only if the district court abused its discretion. *Id.* "[T]he denial [of a motion for leave to amend] will be overturned only if there was no justifying reason for it." *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir. 1995). This Court should deny Plaintiff leave to amend based on futility and undue prejudice to the Board.

**A.     Plaintiff's Proposed Amendment Is Futile.**

A new claim is futile if it would not withstand a motion to dismiss. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974-75 (7th Cir. 2001). Each of the proposed new claims is futile.

7

1.  **Intentional Interference with Contractual Relations (Count 3) and Intentional Infliction of Emotional Distress (Count 5).**

Plaintiff's proposed intentional interference with contract and intentional infliction of emotional distress claims, both asserted under Illinois common law, are futile. The absolute litigation privilege and Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act") bar those claims. The claims will fail on the merits as well.

   a.  **The Statement to Briljent Enjoys Absolute Litigation Privilege Immunity Under Illinois Law.**

As Judge Holderman observed in *Steffes v. Stepan Co.*, 1997 WL 305306, *4 (N.D. Ill. May 30, 1997), *aff'd*, 144 F.3d 1070 (7th Cir. 1998):

> Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation. The communication need not occur in court to be protected by the privilege, and the privilege applies to any communications pertinent to pending litigation. The rationale for the privilege is to secure for attorneys as officers of the court the utmost freedom in representing clients. The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies.

*Id.* (internal citations omitted). This litigation privilege bars even tort claims based on a defendant's statements to others about the plaintiff, so long as those statements were "pertinent to the litigation." *See, e.g., Marchioni v. Board of Educ. of City of Chicago*, 341 F. Supp. 2d 1036, 1051-52 (N.D. Ill. 2004) (granting summary judgment on defamation claim). This litigation privilege bars Plaintiff's proposed tort claims, which are based on a communication which was clearly made "in the course of a legal proceeding" and "pertains to the litigation."

   b.  **The Illinois Tort Immunity Act Bars These Claims Against the Board and Counsel Dreishmire.**

Numerous provisions of the Tort Immunity Act provide immunity from Plaintiff's proposed tort claims. First, regarding Counsel Dreishmire, "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is

8

not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. While Counsel Dreishmire does not determine Board policy, it is clear that the manner in which she conducts discovery in litigation in which she represents the Board (a core duty of her position as Senior Assistant General Counsel) is an exercise of discretion. Second, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. Plaintiff cannot reasonably dispute that conducting discovery related to her claims and alleged damages in litigation against the Board falls squarely within the scope of Counsel Dreishmire's employment as an attorney in the Board's Law Department whose job it is to defend the Board in litigation. Third, "[a] public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210. Given that Counsel Dreishmire acted within the scope of her employment and Plaintiff's proposed tort claims rest exclusively on information provided in writing to Briljent, this third basis for immunity further bars those claims against Counsel Dreishmire.

Likewise, the Tort Immunity Act shields the Board from each of Plaintiff's proposed tort claims. First, "[a] local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106. To the extent Plaintiff alleges she was somehow promised or misled into thinking the Board would not request records from Briljent (an allegation that would not be based in fact), this provision of the Act provides Board immunity from Plaintiff's proposed tort claims. Second, "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745

ILCS 10/2-107. Plaintiff cannot pursue her proposed tort claims, which rest on the written provision of information, against the Board. Third, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. As explained in this Response, Counsel Dreishmire may not be held liable for the proposed tort claims. Accordingly, the Board is also immune from those claims under the Tort Immunity Act.

      c.      **Plaintiff's Proposed Tort Claims Will Fail on the Merits.**

Even if the Board and/or Counsel Dreishmire were not immune to these claims, the claims would not survive a motion to dismiss and, therefore, are futile.

### *Intentional Interference with Contractual Relations*

The elements of an Illinois intentional interference with contractual relations claim are:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (1989). The truthfulness of the allegedly interfering statement is relevant:

> There is of course no liability for interference with contract … on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though … the person to whom the information is given immediately recognizes [the information] as reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

*Steffes v. Stepan Co.*, Rest. (2d) Torts §772 Comment (b). This claim is futile because Plaintiff cannot establish the second, third or fourth elements.

First, while Plaintiff claims she identified her most recent relationship with Briljent in an interrogatory answer, she provides no evidence the Board or Counsel Dreishmire knew she had a contract with Briljent, either through that answer or otherwise. The answer did not state a contract existed and Counsel Dreishmire had not read that answer when she sent Plaintiff's signed authorization to Briljent. Second, Plaintiff cannot establish an intentional and unjustified inducement

of a breach, given that she alleges no untruthful statement made to Briljent. Third, she cannot show the Board and/or Counsel Dreishmire caused Briljent to breach the contract. Briljent's already knew Plaintiff had sued the Board (from the April 2014 subpoena) when it entered into a new relationship with her, which dispels any notion that the October 2014 letter "caused" a breach, even if one had occurred. (**Exhibit A)** Additionally, the Briljent contract Plaintiff attached to her proposed Amended Complaint includes a provision permitting either party "to terminate this Agreement at any time for any reason"; therefore, Briljent committed no breach in terminating what was essentially an at-will relationship. Plaintiff's proposed intentional interference with contract claim could not survive a motion to dismiss and is, therefore, futile.

### Intentional Infliction of Emotional Distress

The elements of an Illinois intentional infliction of emotional distress claim are: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that this conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993), citing *McGrath v. Fahey,* 533 N.E.2d 806, 809 (1988). By no stretch of the imagination would sending a records request to one of at least nine entities with knowledge relevant to Plaintiff's claims and alleged damages be considered "truly extreme and outrageous." Plaintiff's proposed intentional infliction of emotional distress claim could not survive a motion to dismiss and is, therefore, futile.

2.  **Title VII Retaliation (Count 4) and Section 1981 Retaliation (Count 6).**

A standalone Section 1981 claim is not cognizable against a government actor such as the Board. *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014). Even if that was not the case, Plaintiff's proposed Title VII and Section 1981 retaliation claims against the Board and Counsel Dreishmire would fail as a matter of law. "The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under §

1981." *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012), citing *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008).

### a. Claims Based on Litigation Conduct Will Not Constitute Retaliation.

The Seventh Circuit has adopted a modified version of Illinois' litigation privilege, describing that version as "a doctrine that simply precludes actions taken in the adversarial setting of litigation and otherwise redressable through court process from supporting further litigation." *Probst v. Ashcroft*, 25 F. App's 469, 471 (7th Cir. 2001) (affirming summary judgment on Title VII retaliation claims premised on conduct engaged in during litigation). The Seventh Circuit has further explained the absolute immunity the United States Supreme Court has recognized for government prosecutors and agency lawyers involved in administrative proceedings is "equally applicable to attorneys *defending* the government in civil litigation." *Auriemma v. Montgomery*, 860 F.2d 273, 276-77 (7th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989). "[I]t will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation prohibited by [employment discrimination] statutes." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998), quoting *McKenzie v. Illinois Dep't of Trans.*, 92 F.3d 473, 486 (7th Cir. 1996) (finding "[a]n attempt to obstruct the litigation of the underlying discrimination complaint, like oppressive discovery requests and the withholding of other evidence" is "inseparable from the litigation of the claim" and should "be resolved pursuant to court rules, not by Title VII"). For government attorneys, "litigation tactics subject to supervision by the court cannot constitute independent grounds of liability," including "[c]onducting discovery under the rules of civil procedure." *Steffes*, 144 F.3d at 1075, quoting *Auriemma*, 860 F.2d at 278 (addressing retaliation claim based on defense counsel's hiring of investigator to obtain credit reports on plaintiffs from credit reporting agency through use of false pretenses).

Plaintiff premises her proposed claims exclusively on the Board's request for records using an authorization the Board requested and Plaintiff provided in connection with Interrogatories and Requests for Production propounded pursuant to the Federal Rules of Civil Procedure. (**Exhibits**

**B, D, E and F)** FED. R. CIV. P. 33, 34. Therefore, the Board and Counsel Dreishmire are absolutely immune from all of Plaintiff's federal claims based on that conduct. *See Steffes*, 144 F.3d at 1075.

### b. As An Individual, Counsel Dreishmire May Not Be Sued Under Title VII.

Title VII does not permit suits against individuals. *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir. 1998) (affirming grant of motion to dismiss individual defendants due to absence of individual liability in Title VII claims), citing *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995). Therefore, Plaintiff's Title VII claim against Counsel Dreishmire is futile.

### c. As An Independent Contractor of Briljent, Plaintiff Cannot Pursue a Title VII Claim Against the Board.

Title VII protects only alleged retaliation against employees, not independent contractors. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 667-68 (7th Cir. 2013) (affirming dismissal of Title VII retaliation claim against company with which plaintiff sought independent contractor relationship as "not … within the protections of Title VII"). The Briljent contract Plaintiff attached to her proposed Amended Complaint clearly indicates their relationship was that of an independent contractor. Thus, Plaintiff's Title VII retaliation claim is futile because it fails on the merits.

### 3. Section 1983 "Equal Protection Clause—Retaliation" (Count 7).

The undersigned counsel has been unable to locate a case in this jurisdiction recognizing a Section 1983 claim for "Equal Protection Clause—Retaliation." Assuming, however, that this claim is Plaintiff's way of asserting a Section 1981 retaliation claim against a municipality, her proposed amendment will be futile. As explained above in the Title VII/Section 1981 section, the Board and Counsel Dreishmire are immune from federal claims based on conduct during litigation.

Moreover, Plaintiff has alleged (and can allege) no facts supporting *Monell* liability, a prerequisite to asserting a Section 1983 claim. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Specifically, "the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v.*

*County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007). A policy may be found if the constitutional injury was caused "by a person with final policymaking authority." *Sims,* 506 F.3d at 515. Plaintiff can point to no "official policy or custom" of the Board which led to Briljent receiving a request for her records. Nor can she demonstrate Counsel Dreishmire is a policymaker for the Board. *See Smith v. Flaxman*, 962 F.2d 11 (7th Cir. 1992) (affirming dismissal of Section 1983 claim against assistant city attorneys after finding claim that they were policymakers to be "meritless," "[t]heir authority to represent the city and its employees in litigation … does not extend to an authority to create municipal policy" and "their actions at the pretrial conference cannot be construed as a setting of city policy") (internal citations omitted). Thus, her proposed Section 1983 claim is futile.

**B.    Discovery Is About to Close.**

Courts in this District routinely deny motions for leave to amend brought, like this one, at the close of discovery. *See, e.g., Morningware, Inc. v. Hearthware Home Products, Inc.*, 2011 WL 5239226, *2 (N.D. Ill. Nov. 1, 2011), citing *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming denial of leave to amend complaint three days before close of discovery); *Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 473 (7th Cir. 1991) (affirming denial of leave to amend complaint brought at close of discovery); *Bohen v. City of East Chicago,* 799 F.2d 1180, 1184 (7th Cir. 1986) (affirming denial of leave to amend two weeks before close of discovery when amendment prejudiced defendant). When a pleading amendment necessitates delay of the discovery deadline, the Seventh Circuit has found no abuse of discretion in denial of leave to amend. *See Bowden v. Kirkland & Ellis LLP*, 432 F. App'x. 596, 599-600 (7th Cir. 2011) (finding district court "reasonably" denied leave to add new claims and defendants when doing so "would unduly delay disposition of the case by triggering another round of discovery or flurry of motions"); *Lerch v. City of Green Bay*, 218 F. App'x. 502, 504-05 (7th Cir. 2007) (affirming denial of leave to "add allegations of subsequent incidents" when amendment "would have required additional discovery and unduly delayed the case"), citing *Bethany Pharm. Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861-62 (7th Cir. 2001).

14

A delay of several months will result if the Court grants Plaintiff's Motion. First, the Board will have to assign new counsel to represent it, as well as new counsel to represent Counsel Dreishmire, each of whom will require time to become familiar with the case before responding to the new claims. Because the fact discovery deadline is fewer than 30 days away, this will also necessitate an extension of the parties' discovery deadline. Both the Board and Counsel Dreishmire will need to serve on Plaintiff and multiple third parties additional written discovery concerning the new claims.[4] Moreover, the Board planned to depose Plaintiff before the current discovery deadline, but in light of Plaintiff's Motion, has held off on scheduling that deposition so Plaintiff will only need to be deposed one time if the Motion is granted. (Additionally, rather than preparing to take and taking Plaintiff's deposition, the Board has instead been obligated to devote that time to responding to Plaintiff's Motion.) If the requested amendment is allowed, it will not be feasible to depose Plaintiff before the Board and Counsel Dreishmire propound and receive complete responses to the additional written discovery they will be required to serve. If Plaintiff files the new claims, the Board and Counsel Dreishmire will have to depose corporate representatives and/or others from Curriculum Associates and Briljent, the third parties involved in those claims.

Simply put, if the Court grants Plaintiff's Motion, fact discovery will have to be extended by a minimum of five months, which is a conservative estimate. This constitutes unfair prejudice to the Board and requires denial Plaintiff's Motion. *See Lerch*, 218 F. App'x. at 504-05.

## CONCLUSION

The Board respectfully requests that the Court deny Plaintiff's Motion and award the Board all other relief to which it may be entitled.

---

[4] Because Plaintiff's first mention of Curriculum Associates as a third party which may have relevant information and/or documents is that in her Motion, the Board has not conducted discovery involving Curriculum Associates. Moreover, although the Board requested records from Briljent, Briljent did not produce among those records certain documents Plaintiff attaches to her Motion (i.e., her email correspondence with Briljent) or any other documents pertaining to Briljent's decision to terminate Plaintiff's work on a particular project, which is at the heart of her proposed claims. Therefore, it will be necessary to request and obtain additional discovery from Briljent as well.

15

Respectfully submitted,

**BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JAMES L. BEBLEY, General Counsel

By: s/*Lisa A. Dreishmire*
Lisa A. Dreishmire
Senior Assistant General Counsel
Board of Education of the City of Chicago
Law Department, 7th Floor
Chicago, Illinois 60603
773-553-1700

**CERTIFICATE OF SERVICE**

I certify that I caused this pleading to be served upon Plaintiff *pro se* by CM-ECF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on November 6, 2014.

s/*Lisa A. Dreishmire*
Lisa A. Dreishmire