**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOYCE HUTCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-CV-6447 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BOARD'S SUR-REPLY TO PLAINTIFF'S MOTION FOR LEAVE TO
SUPPLEMENT COMPLAINT AND ADD LISA DREISHMIRE AS A DEFENDANT**

As permitted by the Court (Docket #46), Defendant Board of Education of the City of
Chicago (the "Board") files this Sur-Reply to Plaintiff's Motion for Leave to Supplement Complaint
and Add Lisa Dreishmire as a Defendant (the "Motion," Docket #33) and states:

**INTRODUCTION**

In her Reply to the Board's Response to the Motion (Docket #43), Plaintiff raises new
arguments and "factual" allegations and submits new evidence, none of which alter the fact that the
Court should deny the Motion. First, she baselessly attacks the character of Board counsel by
misrepresenting the events in an unrelated case filed by another *pro se* plaintiff whom the court
warned to "consider carefully any further accusations lacking factual support against the professional
reputation and integrity of Board Counsel" (a warning Plaintiff would do well to heed). Next, she
wrongly claims the Board was not entitled to speak with a fact witness in this case and erred in filing
evidence of Plaintiff's history of making baseless allegations against Board counsel. Plaintiff's Reply
does not alter the fact that her proposed claims are barred by federal and state immunities and her
independent contractor status with Briljent, among other things. Finally, Plaintiff's demand for
sanctions against Board counsel is meritless and should be rejected. The Board therefore asks again
that the Court deny the Motion, as well as Plaintiff's new request for sanctions.

## ARGUMENT

**A.     Plaintiff Falsely Portrays Board Counsel's Conduct in Other Litigation.**

Plaintiff's Reply relies largely on specious allegations irrelevant to the merits of her Motion. She falsely claims Board counsel "has a history of harassing, threatening and adversely affecting opposing litigants' employment," citing *Cunliffe v. Board of Education of the City of Chicago, et al.*, Case No. 12-6334, in the United States District Court for the Northern District of Illinois, Eastern Division. (Docket #43 at 1-3) Her allegations are not based in reality.

First, Board counsel played no role in the conduct underlying Cunliffe's claims. In her most recent Complaint, Cunliffe complains of the alleged actions of the Board and a former Principal related to her "unsatisfactory" evaluation received during the 2009-2010 school year and August 2010 layoff. (Case No. 12-6334, Docket #144, attached as **Exhibit A**) Ms. Dreishmire did not work for the Board until January 2013 and first appeared in *Cunliffe* on January 7, 2013. (Case No. 12-6334, Docket #21, attached as **Exhibit B**) Therefore, she played no role in the Board actions about which Cunliffe complains.

Second, Plaintiff falsely accuses Board counsel of "harassing" and "threatening" Cunliffe. Cunliffe failed to timely or adequately respond to the Board's written discovery requests. (Case No. 12-6334, Docket #42, attached as **Exhibit C**—without exhibits) Therefore, Board counsel complied with Northern District of Illinois Local Rule ("Local Rule") 37.2 by attempting to resolve the discovery deficiencies through communication with Cunliffe. (**Exhibit C** at 8) Cunliffe ignored those efforts, except for one instance in which she answered the phone but insisted Board counsel call back and leave a message (a message Cunliffe failed to return). (**Exhibit C** at 8) In response to the Board's subsequent Motion to Dismiss or to Compel Plaintiff's Discovery Responses, Cunliffe labeled as "menacing and harassing" the Board's counsel's call to her cell phone (the only number Cunliffe provided) during business hours, made in order to comply with Local Rule 37.2. (Case No. 12-6334, Docket #54, attached as **Exhibit D**—without exhibits) During a November 20, 2013,

hearing on the Motion, Magistrate Judge Susan E. Cox explained to Cunliffe that the Board was obligated to confer with her before filing a discovery motion and was entitled to engage in such communications during regular business hours, rather than in the evening, as Cunliffe demanded. (**Exhibit E at 12-14**)

Contrary to Plaintiff's implications, Ms. Dreishmire was neither sanctioned nor otherwise warned in the Cunliffe case. In fact, the Court warned **<u>Cunliffe</u>** to "consider carefully any further accusations lacking factual support against the professional reputation and integrity of Board Counsel." (Case No. 12-6334, Docket #107, attached as **Exhibit F** at 2-3) After Ms. Dreishmire appeared on behalf of newly-named defendants the Board's Office of the Inspector General ("OIG") and James Sullivan (then serving as OIG), Cunliffe demanded the Court disqualify Ms. Dreishmire from representing Mr. Sullivan due to an alleged "conflict of interest." (Case No. 12-6334, Docket #90, 102, attached as **Exhibits G and H**) In her November 22, 2013 Order recommending denial of Cunliffe's motion, Magistrate Judge Cox wrote:

> In her motion, plaintiff accuses the Board's staff attorneys of conspiring with the other defendants, including the named Board of Education, to deprive her of her civil rights. Plaintiff does not include any specific facts to back up her serious accusations. Plaintiff seems to be arguing that Ms. Dreishmire should not represent Mr. Sullivan because Mr. Sullivan should be investigating Ms. Dreishmire's conduct in the conspiracy. But this contention does not find any support in the record before this Court. Ms. Dreishmire, as Mr. Sullivan points out in his response, did not work for the Board at the time of plaintiff's complaint about her co-worker or when plaintiff was terminated. She is not accused of doing anything which remotely could be construed as being within the purview of Sullivan and the OIG's responsibility to investigate.
>
> In her Complaint, and in open Court during a discovery conference, Ms. Cunliffe has expressed her frustration with the unfairness of defendants' alleged injury to her professional reputation as a result of her unfavorable evaluation. **One hopes, therefore, that she will consider carefully any further accusations lacking factual support against the professional reputation and integrity of Board Counsel**.

(**Exhibit F** at 2-3, emphasis added) Judge Darrah adopted Magistrate Judge Cox's Order in its entirety on December 3, 2013. (Case No. 12-6334, Docket #111, attached as **Exhibit I**)

Several months later, on April 17, 2014, the Board and Mr. Sullivan sought permission for Ms. Dreishmire to withdraw as their counsel. (Case No. 12-6334, Docket #125, attached as **Exhibit J**) As they explained, Ms. Dreishmire's recent promotion to the position of Senior Assistant General Counsel for the Board had resulted in the reduction of her litigation case load; representation of the Board and Mr. Sullivan was reassigned to different Board counsel for that reason. (**Exhibit J**) Ms. Dreishmire's withdrawal from the Cunliffe case had nothing to do with Cunliffe's frivolous allegations about Ms. Dreishmire, which both Judge Darrah and Magistrate Judge Cox rejected months earlier. (**Exhibits F, I and J**)

**B.      The Board Was Entitled to Contact Witness Sue Kallgren.**

Equally irrelevant to Plaintiff's proposed claims are her spurious claims that Board counsel improperly contacted a witness in this case. (Docket #43 at 10-11) On September 29, 2014, Board counsel asked Plaintiff for available dates for the depositions of Plaintiff and a witness Plaintiff identified named Sue Kallgren. (**Exhibit K**) Ms. Kallgren works for a company named Allison & Taylor. (**Exhibit L at ¶2**) Plaintiff never sought employment with Allison & Taylor; rather, it is a professional reference-checking company which she hired to conduct a "test" reference check with the Board on her behalf. (**Exhibit L at ¶¶3-4**) Plaintiff responded to the Board's request for deposition dates, in relevant part, by saying: "In terms of Ms. Kallgren, I have provided the Board her contact information. I cannot speak to when you can schedule her. It is best that you request a time to schedule her yourself." (**Exhibit M**)

Accordingly, Ms. Dreishmire called Ms. Kallgren on or about October 3, 2014. They discussed the Board's wish to depose Ms. Kallgren or, alternatively, obtain a declaration from her which would obviate the need for her deposition, given that Ms. Kallgren lives and works in Michigan. When Ms. Kallgren expressed a preference for providing a declaration, Ms. Dreishmire interviewed her regarding relevant facts for possible inclusion in the declaration and said she would

email Ms. Kallgren with a draft declaration for her review.[1]

In obtaining her signed declaration, the Board did not give Ms. Kallgren a subpoena or employment records authorization. No subpoena was necessary for Board counsel to talk informally with a witness Plaintiff identified. Moreover, the records and information Allison & Taylor possesses concerning Plaintiff are not "employment records" because that company never employed or considered employing Plaintiff; therefore, the Board did not use an employment records authorization to obtain Ms. Kallgren's cooperation. (**Exhibit L at ¶¶3, 16**) Ms. Kallgren did not ask the Board for a subpoena or signed authorization and readily provided the information the Board requested, which was used to draft her declaration explaining the meaning of and basis for various statements Ms. Kallgren made in a report describing a Board reference check she conducted for Plaintiff.[2] (**Exhibit L**)

Plaintiff acknowledges she learned of the Board's contact with Ms. Kallgren by October 24, 2014. (Docket #43 at 10) However, she never asked the Board not to contact Ms. Kallgren; rather, Plaintiff merely asked for copies of any subpoena sent to her. (**Exhibit N**) While Plaintiff says her October 14, 2014, letter to the Board "revoke[ed] the Defendants' [sic] authorization to contact anyone else regarding information concerning Plaintiff," it actually states:

> Effective immediately, that is, upon Defendant's receipt of this correspondence, [Plaintiff] hereby revokes the Educational and Employment Records Authorization from containing Plaintiff's signature and dated August 29, 2014.

(**Exhibit O**) The Board did not use that form to obtain information from Ms. Kallgren; thus, the October 14, 2014, letter had no effect on the Board's right to continue to communicate with her.

---

[1] Ms. Dreishmire did not—as Plaintiff claims—tell Ms. Kallgren Plaintiff "chose not to obtain an attorney." (Docket #43 at 10) Rather, when the subject of whether Plaintiff was represented by counsel came up, Ms. Dreishmire said—accurately—that while Plaintiff had originally been represented by counsel, she chose to discontinue that representation and now represented herself.

[2] The attached LaPlante (Kallgren) Declaration belies Plaintiff's claim in her Reply that the Allison & Taylor reference check showed the Board gave negative or no employment verification for Plaintiff. (**Exhibit L**; Docket #43 at 9) In fact, as Ms. Kallgren stated under oath, the Board *did* respond to her request to verify Plaintiff's employment and the response provided was not negative. (**Exhibit L**)

**C.      The Board Had Permission to File Evidence of Plaintiff's Prior Baseless Attack on Board Counsel.**

Plaintiff further contends, incorrectly, that Ms. Dreishmire engaged in sanctionable "misconduct" by filing as Exhibit M to the Board's Response to Plaintiff's Motion a letter from the Illinois Attorney Registration and Disciplinary Commission ("ARDC") evidencing the conclusion of its investigation regarding Plaintiff's unfounded attack on the integrity of the Board's prior counsel. (Docket #43 at 12) She claims the letter's statement that ARDC investigations are "private and confidential" barred the Board from filing the letter. (Docket #43 at 12) However, the subject of an ARDC investigation is authorized to disclose her exoneration to anyone she likes. Before filing the letter, Ms. Dreishmire obtained permission from prior Board counsel Sabrina Haake—the subject of the letter and another target of Plaintiff's repetitive and spurious attacks on Board counsel—to file it. Simply put, Ms. Dreishmire did nothing wrong in attaching Exhibit M to the Board's Response.

**D.      Plaintiff Fails to Overcome the State and Federal Immunity Enjoyed by the Board and its Counsel for Discovery Conduct in Litigation.**

The Board explained in its Response that each of Plaintiff's proposed new claims would be futile because, among other things, the Board and its counsel are immune from liability for the alleged conduct under both state and federal law. (Docket #38 at 8-10, 12-13) Plaintiff's sole response to that argument is found in this sentence: "Although some courts have found that an attorney's conduct during litigation is privileged and immune from liability, other courts have determined that if an attorney's conduct encompasses an intentional ethical breach, it may be outside the scope of the immunity and may result in liability." (Docket #43 at 13-14) The lone case Plaintiff cites for that proposition, however, does not so hold.

In *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489 (7th Cir. 2013), the defendant in a class action challenged class certification, arguing the district court should have found class counsel "inadequate" based on that counsel's alleged ethical violations in investigating the case. The Seventh Circuit held, "while we neither approve of nor condone the actions of [class counsel]

6

when investigating the claims in this suit, we nevertheless do not conclude that counsels' questionable performance in the investigative stage of this case prevents class certification." *Id.* at 491. *Reliable Money Order* did not encompass the issue presented here: whether a litigant and its counsel may be civilly liable for the manner in which they conduct discovery in a lawsuit. The language Plaintiff quotes from *Reliable Money Order* did not pertain to civil liability and was not necessary to the decision, but rather is *dicta* addressing the defendant's argument that a failure to find class counsel inadequate would "incentivize and reward overly aggressive and unethical attorney conduct." *Id.* at 502. Plaintiff offers no legal authority to counter the fact that the Board and its counsel are immune from Plaintiff's proposed state law claims as well. Simply put, Plaintiff failed to counter the Board's argument that both the Board and its counsel are immune from the claims she wishes to add.

**E.     Plaintiff Does Not Adequately Refute the Fact that Her Independent Contractor Status with Briljent Makes Her Proposed Title VII Claims Futile.**

The Board explained in its Response that Plaintiff's independent contractor status with Briljent dooms her proposed Title VII claims against the Board and its counsel. (Docket #38 at 13) Plaintiff's lone rejoinder to that argument is the case of *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632 (7th Cir. 2004). *Flannery*, however, is easily distinguishable from the facts presented here.

In *Flannery*, the independent contractor relationship with which the former employer allegedly interfered was its own: as part of Flannery's severance agreement which ended his employment, his employer agreed to provide him with future consulting work. *Id.* at 641-42. The Seventh Circuit found the fact that independent contractors lack standing to sue under the Age Discrimination in Employment Act or Americans with Disabilities Act did not bar Flannery's retaliation claim against his former employer because his "consulting arrangement grew out of his employment relationship" with the former employer. *Id.* at 642. Among other things, his consultant work was a continuation of his prior work for that employer and the consultancy was a part of his

severance package. *Id.* Under these circumstances, the Court of Appeals found, Flannery's "retaliation claims have the requisite nexus to employment and thus are actionable. *Id.* at 643. In contrast, the independent contractor relationship with which Plaintiff claims the Board interfered was with a third party, was not bestowed upon her by the Board and was not a term of a severance arrangement between Plaintiff and the Board. *Flannery* does not offer Plaintiff an escape from the general rule that an independent contractor relationship does not provide standing to assert a Title VII retaliation claim.

**F.** **The Court Should Deny Plaintiff's Demand for Sanctions Against Board Counsel.**

Plaintiff does not allege Board counsel has violated any Court Order, but rather claims she engaged in "numerous discovery abuses in the instant litigation, and it is obvious that this is a common practice of hers." (Docket #43 at 13) As explained above, Plaintiff is wrong on both counts. Board Counsel has violated no Court Order and has not abused the discovery process in this or any other litigation, as made clear in the Board's Response and this Sur-Reply. The Court should deny Plaintiff's baseless demand for sanctions.

**CONCLUSION**

The Board respectfully requests that the Court deny Plaintiff's Motion and request for sanctions and award the Board and its counsel all other relief to which they may be entitled.

Respectfully submitted,

**COUNSEL FOR DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JAMES L. BEBLEY, General Counsel

By:     */s/ Lisa A. Dreishmire*
Lisa A. Dreishmire
Senior Assistant General Counsel
Board of Education of the City of Chicago
Law Department
1 North Dearborn, Suite 900
Chicago, Illinois 60602
(773) 553-1700

8

## CERTIFICATE OF SERVICE

I certify that I caused this pleading to be served upon Plaintiff *pro se* by CM-ECF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on December 1, 2014.

s/Lisa A. Dreishmire
Lisa A. Dreishmire