IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE HUTCHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13-CV-6447 |
| v. ) | |
| ) | Judge Edmond E. Chang |
| CHICAGO BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT BOARD'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND PROHIBIT USE OF DECLARATIONS

Defendant Board of Education of the City of Chicago (the "Board") files this Response to Plaintiff's Motion to Compel and Prohibit Use of Declarations (the "Motion," Docket #60), stating:

### INTRODUCTION

In a Motion on which she failed to confer with the Board (as required by Local Rule 37), Plaintiff asks the Court to compel the Board to produce additional documents and bar use of a declaration signed by witness Suzanne Kallgren (LaPlante). The documents Plaintiff demands: (1) have already been produced or are not in the Board's possession; (2) are not responsive to any discovery request at issue; (3) are privileged; and/or (4) are not reasonably calculated to lead to the discovery of admissible evidence and infringe upon the privacy interests of an individual who is not a party to this litigation. Moreover, Ms. Kallgren's declaration is fully admissible and the Board did nothing wrong in procuring it. The Court should therefore deny the Motion.

### BACKGROUND FACTS

A.  **Plaintiff's First Case Against the Board.**

Plaintiff previously sued the Board and two former supervisors in Case No. 09-CV-7931 ("*Hutchens I*"). She asserted employment claims arising from her 2009 layoff from the Board. (Docket #1, *Hutchens I*) This Court granted summary judgment and denied Plaintiff's Motion to Alter Judgment; Plaintiff's appeal remains pending. (Docket #75, 75-1 and 98 in *Hutchens I*)

**B.     Plaintiff's Second Case Against the Board.**

In September 2013, Plaintiff filed this case, alleging the Board retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq.* ("Title VII"), the First Amendment and the Illinois Whistleblower Reward and Protection Act ("IWRPA"). ("*Hutchens II*," Docket #1) She: (1) claims she has been unable to obtain or maintain post-Board employment because of the Board's employment verification and references for her; (2) accuses the Board of not responding promptly to a reference request by Allison & Taylor, a third party Plaintiff hired to find out what the Board was telling prospective employers about her; and (3) contends the Board engaged in this conduct to retaliate against her for filing *Hutchens I* and reporting to the federal and state governments and the Board's Office of the Inspector General ("OIG") an alleged "payroll scam" involving her alleged comparator in *Hutchens I*. (Docket #1 ¶¶17, 18, 20-28, 40-46)

**C.     The Board's Response to Plaintiff's Requests for Production in *Hutchens II*.**

In the last 5 months, Plaintiff served the Board with six sets of Requests for Production. In the first set, she sought 23 categories of documents, including but not limited to multiple categories of documents related to the relationship between the Board and Sabrina Haake (its counsel in *Hutchens I*) and/or the Board's awareness of an Attorney Registration and Disciplinary Commission ("ARDC") complaint Plaintiff lodged against Ms. Haake. (**Exhibits A and B**) In her second set, Plaintiff sought 10 categories of documents. (**Exhibits C and D**) Plaintiff's third set contained 2 requests for information. (**Exhibits E and F**) The Board has not yet objected or otherwise responded to Plaintiff's Fourth, Fifth or Sixth Requests and has filed a Motion (now unopposed by Plaintiff) asking the Court to extend to at least January 20, 2015, its deadline to do so. (Docket #63)

The Board has already produced 979 pages of documents in this single-plaintiff retaliation case. (**Exhibit G**) Among these documents are two unsigned drafts and a signed final copy of a declaration obtained from Ms. Kallgren (a witness identified by Plaintiff) (**Exhibits H, I and J**), as well as all correspondence between Ms. Kallgren and the undersigned Board counsel. The Board has

not withheld from production any correspondence or documents exchanged between Ms. Kallgren and the undersigned counsel.

Also among the Board's document production are records the Board received from City Colleges (identified in the Motion as "Truman Middle College") and the Princeton Review. The first production was made on June 27, 2014, with the City Colleges documents Bates-labeled CPS/Hutchens 206-211 and the Princeton Review documents Bates-labeled CPS/Hutchens 220-223. The Board supplemented its production on November 21, 2014, to include other information received from and exchanged with City Colleges (CPS/Hutchens 511-62 and 723-81), and the Princeton Review (CPS/Hutchens 469-90 and 798-822). The Board has produced to Plaintiff all documents these entities provided the Board in response to its own subpoena and/or request for records, as well as all communications between such entities and the undersigned Board counsel.

**D.    The Board Was Entitled to Contact Witness Sue Kallgren.**

In the Motion, Plaintiff echoes her previous (now rejected) claim that Board counsel "grossly undermined the legal process by inappropriately tampering and interfering with the testimony of Plaintiff's witness, Sue Kallgren." (Docket #60 at 1) On September 29, 2014, Board counsel asked Plaintiff for available dates for the depositions of Plaintiff and Ms. Kallgren. (**Exhibit K**) Ms. Kallgren works for a company named Allison & Taylor. (**Exhibit J ¶2**) Plaintiff never sought employment with Allison & Taylor; rather, it is a professional reference-checking company which she hired to conduct a "test" reference check with the Board on her behalf. (**Exhibit J ¶¶3-4**) Plaintiff responded to the Board's request for deposition dates, in relevant part, by saying: "In terms of Ms. Kallgren, I have provided the Board her contact information. I cannot speak to when you can schedule her. It is best that you request a time to schedule her yourself." (**Exhibit L**)

Accordingly, Ms. Dreishmire called Ms. Kallgren on or about October 3, 2014. They discussed the Board's wish to depose Ms. Kallgren or, alternatively, obtain a declaration from her which would obviate the need for her deposition, given that Ms. Kallgren lives and works in

3

Michigan. When Ms. Kallgren expressed a preference for providing a declaration, Ms. Dreishmire interviewed her regarding relevant facts for possible inclusion in the declaration and said she would email Ms. Kallgren with a draft declaration for her review.[1]

In obtaining her signed declaration, the Board did not give Ms. Kallgren a subpoena or employment records authorization. No subpoena was necessary for Board counsel to talk informally with a witness Plaintiff identified. Moreover, the records and information Allison & Taylor possesses concerning Plaintiff are not "employment records" because that company never employed or considered employing Plaintiff; therefore, the Board did not use an employment records authorization to obtain Ms. Kallgren's cooperation. (**Exhibit J ¶¶3, 16**) Ms. Kallgren did not ask the Board for a subpoena or authorization and readily provided the information the Board requested, which was used to draft her declaration explaining the meaning of and basis for various statements Ms. Kallgren made in a report describing a Board reference check she conducted for Plaintiff. (**Exhibits H and J**)

Plaintiff acknowledges she learned of the Board's contact with Ms. Kallgren by October 24, 2014. (Docket #60 at 10) However, she never asked the Board not to contact Ms. Kallgren.

## ARGUMENT

Plaintiff is not entitled to the relief she seeks and the Court should deny the Motion.

**A.      Plaintiff Baselessly Accuses Board Counsel of Altering Documents.**

Plaintiff first claims Board counsel altered the dates on the first and second drafts of Ms. Kallgren's declaration "in order to disguise the date the document was actually created." (Docket #60 at 2, 4) Her accusation is false.

The Board did not keep a contemporaneously printed paper copy of its counsel's emails to

---

[1] Ms. Dreishmire did not—as Plaintiff claims—tell Ms. Kallgren Plaintiff "chose not to obtain an attorney." (Docket #60 at 4-5) Rather, when the subject of whether Plaintiff was represented by counsel came up, Ms. Dreishmire said—accurately—that while Plaintiff had originally been represented by counsel, she chose to discontinue that representation and now represented herself.

4

Ms. Kallgren and the attachments thereto. The electronic copy (Word format) of the declaration the Board sent Ms. Kallgren contains a date set to update automatically when the document is opened or printed. On November 19, 2014, Board counsel printed for production to Plaintiff its correspondence to and from Ms. Kallgren, including Board counsel's emails with draft declarations attached. Due to the automatically updating date, the two draft (Word format) declarations printed on November 19, 2014, each bear that date. (**Exhibits H and I**) (Because Ms. Kallgren's final, signed declaration is preserved in PDF format, its date did not automatically update when printed.) Board counsel did not remove the automatic updater from the draft declarations before printing them due to a concern that doing so could constitute an alteration of the original document. However, the Board made no effort to hide the actual date on which each draft declaration was sent to Ms. Kallgren—immediately preceding each draft in the Board's production is an email with the actual date on which the Board forwarded that draft to Ms. Kallgren for review, and the email states a draft declaration is attached. (**Exhibits H and I)** Plaintiff admits as much in the Motion, stating "it is clear … that Declaration No. 1 was created before Declaration No. 2 and Declaration No. 3. (Docket #60 at 4, citations omitted) Plaintiff's accusation is not based in reality and the Court should reject it.

**B.     Plaintiff Falsely Accuses Board Counsel of Impropriety Related to Ms. Kallgren.**

Plaintiff implies Board counsel acted inappropriately by not discussing with her the fact that Ms. Kallgren was considering signing a declaration. (Docket #60 at 3) As the Court observed during a recent status in this case, however, Ms. Kallgren is not a witness belonging exclusively to Plaintiff and the Board was free to discuss a declaration with her, with or without Plaintiff's knowledge or permission.

Plaintiff next suggests Board counsel influenced Ms. Kallgren to "testify falsely or in a manner which would contradict, nullify or undermine the information contained in the reference report [Ms.] Kallgren created for Plaintiff in 2013." (Docket #60 at 5) Nothing could be further

5

from the truth. In her very first written communication with Ms. Kallgren, in which she forwarded a draft declaration for Ms. Kallgren's review, Board counsel wrote:

> Please review the declaration very carefully to make sure everything in it is accurate. … If you have any questions or concerns whatsoever, please let me know so I can make sure this declaration is something with which you are completely comfortable before you sign it. It is very important that this document is accurate.

(**Exhibit H at CPS/Hutchens 00586**) After Ms. Kallgren expressed a wish to make certain revisions to the declaration, Board counsel spoke with her by telephone to determine what changes were necessary. (**Exhibit I at CPS/Hutchens 00607, 00632, 00641**) In an email forwarding Ms. Kallgren a revised declaration for review, Board counsel stated:

> I have attached the declaration with your changes, which we just discussed. Please review it carefully to make sure I made the correct changes.

(**Exhibit I at CPS/Hutchens 00641**) In her signed declaration, Ms. Kallgren states:

> No one has paid me or otherwise coerced or forced me to make any statement in this Declaration. I had an opportunity to review and consider this Declaration and I was allowed to make changes to it before signing; I took advantage of that opportunity.
>
> I declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that each statement in this Declaration is true and correct. I understand this means my testimony in this Declaration has the same force and effect as if I was testifying under oath before a judge or jury.

(**Exhibit J at CPS/Hutchens 00660**) Collectively, these statements by Board counsel and Ms. Kallgren make clear that Board counsel emphasized the importance of an accurate declaration before Ms. Kallgren voluntarily signed a declaration (which she personally helped craft) under penalty of perjury.

Plaintiff further claims, without evidence, that Ms. Kallgren was "uncomfortable" speaking with Board counsel about her declaration. (Docket #60 at 6) This is not reflected in the communications between Ms. Kallgren and Board counsel, which include Ms. Kallgren responding, "My pleasure, Lisa" in response to Board counsel thanking her for her assistance. (**Exhibit M at CPS/Hutchens 00662**)

Finally, Plaintiff contends, again without evidentiary support, that Board counsel "significantly harmed the business relationship and trust between Plaintiff and [Ms.] Kallgren." (Docket #60 at 5) To the contrary, the Motion demonstrates Ms. Kallgren sought and obtained Plaintiff's permission to speak with Board counsel and later provided Plaintiff with a copy of the signed declaration at Plaintiff's request. (Docket #60, Exhibit E) Nor is Ms. Kallgren's employer, Allison & Taylor, a company with which Plaintiff sought employment. (**Exhibit J ¶16**)

Plaintiff has offered no basis on which to bar from evidence either the draft or signed versions of Ms. Kallgren's declaration. Therefore, the Court should deny her demand that it do so.

**C.     The Board's Production of Documents Related to Communications Between Ms. Kallgren and the Undersigned Counsel.**

Plaintiff further accuses the Board of withholding communications with Ms. Kallgren in which the undersigned counsel engaged before October 16, 2014. (Docket #60 at 5) First, Plaintiff has not served any Requests for Production encompassing such communications. The Request on which she relies and the Board's response to same read as follows:

> 1.    **Copies of any and all subpoenas, letters, e-mails, Educational and Employment Records Authorizations containing Pro Se Plaintiff, Joyce Hutchens' signature, and any and all documents accompanying such documents or correspondence which Defendant Chicago Board of Education sent to any entity, organization, institution, or individual in an effort to acquire information concerning Pro Se Plaintiff, Joyce Hutchens' medical, employment, education or financial status.**
>
> RESPONSE:
>
> The Board objects to this Request because it is not reasonably calculated to lead to the discovery of admissible evidence concerning Plaintiff's claims in this litigation, to the extent she seeks any communications other than the actual subpoenas and/or other records requests. Additionally, the Request is unlimited in time and not reasonably limited in scope. The Board also objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege and/or work product exemption, including but not limited to any attorney-client communications or attorney notes or other work product. Subject to and without waiving these objections, *see* documents produced by the Board.

(**Exhibits E and F**) The Board's communications with Ms. Kallgren were not sent, as this Request

provides, "in an effort to acquire information concerning Pro Se Plaintiff, Joyce Hutchens' medical, employment, education or financial status." Rather, the communications were sent in an effort to obtain documents Allison & Taylor possessed related to the reference check service it provided to Plaintiff for a fee and, later, a declaration from Ms. Kallgren explaining and adding context to her notes concerning her own contact with the Board about Plaintiff.

Second, even if Plaintiff had requested them, the Board has not withheld any such communications.[2] The undersigned counsel's only contact with Ms. Kallgren before October 16, 2014, was by telephone. The Board did not make an audio recording of any telephone call with Ms. Kallgren. Plaintiff is not entitled to discover Board counsel's notes taken during calls with Ms. Kallgren, which are protected from disclosure by the work-product doctrine. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618, 621-22 (7th Cir. 2010) (observing, "work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case" and holding attorney's notes taken during witness interviews enjoyed work-product doctrine protection), citing FED. R. CIV. P. 26(b)(3), *United States v. Nobles,* 422 U.S. 225, 238–39 (1975) and *United States v. Smith,* 502 F.3d 680, 689 (7th Cir. 2007). "Unlike the attorney-client privilege, the attorney has an independent privacy interest in his work product and may assert the work-product doctrine on his own behalf; the doctrine's protection is not waived simply because the attorney shared the information with his client." *Sandra T.E.*, 600 F.3d at 618, citing *Hobley v. Burge,* 433 F.3d 946, 949–50 (7th Cir. 2006).

---

[2] In preparing this Response, the Board located emails between the Board's prior counsel, Mr. Flores, and Allison & Taylor, sent in connection with the Board's initial subpoena to Allison & Taylor. They Board does not believe those emails are reasonably calculated to lead to the discovery of admissible evidence regarding Plaintiff's claims or that they are responsive to her production requests. Again, Allison & Taylor was not a prospective or actual employer of Plaintiff, but rather a reference checking company, and would not have information regarding her "employment status." However, the Board produced these emails anyway in an effort to be thorough (**Exhibit G**; the documents are Bates-labeled CPS/Hutchens 00876-00897).

8

**D.  Plaintiff Falsely Claims the Board Has Withheld Other Third Party Documents.**

Plaintiff goes on to accuse the Board of withholding documents received from other third parties. Specifically, she contends the Board received from City Colleges or Princeton Review, but did not produce to her, all emails Plaintiff allegedly exchanged with a Principal at City Colleges (Docket #60 ¶38), a reference check City Colleges allegedly conducted on Plaintiff (Docket #60 ¶40) and emails Plaintiff allegedly exchanged with the Princeton Review (Docket #60 ¶¶42-43). As explained at pp. 2-3, *supra*, the Board has produced to Plaintiff all documents received from these entities. Her allegation to the contrary is both frivolous and false.

**E.  Plaintiff's Request for Communications Between the Board and the OIG or Cook County State's Attorney.**

Plaintiff next complains about the Board's responses to Request for Production Nos. 16 and 17, in which she sought documents exchanged between the Board and the OIG or Cook County State's Attorney related to Plaintiff's January 2013 allegation of a "payroll fraud scheme" involving Ms. Glowacki, a former colleague about whose retention Plaintiff complained in *Hutchens I*. (Docket #60 at 9-12; *Hutchens I*, Docket #75-1 at 10) Notwithstanding its objections, the Board produced all non-privileged documents potentially responsive to these Requests: Plaintiff's January 11, 2013, letter to the OIG, to which a January 2, 2013 letter and exhibits Plaintiff purportedly sent to the United States Attorney's and Illinois Attorney General's offices were attached. (CPS/Hutchens 166-200)

The only document the Board has withheld that is potentially responsive to Request Nos. 16 or 17[3] is an exchange of emails between Brian Flores (former Board counsel in this case) and James Sullivan (the Board's then-Inspector General). The emails are dated January 22, 23 and 27, 2014, and relate to the Board's defense of *Hutchens II*. Because the Board already had notice of this 2013-filed

---

[3] The Board sent two letters to the Cook County State's Attorney in connection with a subpoena Plaintiff recently served on that office (one notifying the office of the Board's intent to object to the subpoena and one attaching a copy of the objections the Board filed). (**Exhibit N**, attached subpoenas omitted) Those letters are not responsive to Request Nos. 16 or 17 because they were not sent "in an effort to acquire information," but the Board has nonetheless provided Plaintiff with a copy of them via this Response.

suit when the emails were sent, the emails were clearly sent in connection with litigation. The Inspector General is a Board employee. 105 ILCS 5/34-13.1; *see also Cunliffe v. Wright*, -- F. Supp. 2d –, 2014 WL 2808969, *13 (N.D. Ill. June 20, 2014). Board Resolution 03-0423-RS20 provides that the Board's Law Department (referred to as "General Counsel" in the Resolution) should advise the Inspector General as needed. (**Exhibit O**) The Law Department is authorized to serve as the Inspector General's legal counsel and Mr. Flores did so in the referenced communication. (Case No. 12-6334, Docket #107) The withheld emails are therefore protected by the attorney-client privilege and work product doctrine and were properly withheld. *Sandra T.E.*, 600 F.3d at 621-22.

### F. Plaintiff's Request for Documents Regarding Her Former Colleague.

Finally, Plaintiff challenges the Board's response to her Second Request for Production No. 1,[4] in which she sought the personnel file and a resume and cover letter for Ms. Glowacki. (Docket #60 at 12-13; **Exhibit D at 4**) In the Motion, Plaintiff contends Ms. Glowacki is similarly situated to her and was paid more than Plaintiff before Plaintiff's 2009 layoff from the Board. (Docket #60 at 12-13)

While Plaintiff first mentioned alleged pay discrimination in a reply brief supporting her post-judgment motion in *Hutchens I*, this Court held she raised that issue too late. (Case No. 09-7931, Docket #83 at 12-14, #98 at 2) Her claims in *Hutchens II* likewise do not include pay discrimination; rather, they are limited to alleged post-employment retaliation in violation of Title VII, the First Amendment and the IWRPA. (Docket #1) Only Count II (the IWRPA claim) relates to Ms. Glowacki (albeit tangentially). In support of that Count, Plaintiff pleaded that the Board retaliated against her by not "providing timely, professional reference and employment verification information" because she supposedly reported an "alleged payroll scam" to the federal and state governments and the OIG. (Docket #1 ¶¶30-38, 45) While Plaintiff's Complaint and Motion are

---

[4] Plaintiff appears to mistakenly claim she is challenging the Board's response to Request No. 4, given that the Request she sets forth in the Motion is No. 1. (Exhibit D at 4)

somewhat unclear, the Board believes she contends someone other than Ms. Glowacki engaged in a "scam" to obtain a higher pay rate for Ms. Glowacki; Plaintiff has never alleged Ms. Glowacki, who was her peer at the Board, retaliated against her.

As the Board correctly objected, Plaintiff's request for Ms. Glowacki's personnel records is not reasonably calculated to lead to the discovery of admissible evidence concerning her claims in this case. Ms. Glowacki has nothing to do with Plaintiff's retaliation claim based on Plaintiff's filing of *Hutchens I*. With respect to her IWRPA retaliation claim, Plaintiff must show: (1) her actions were done to promote an IWRPA claim and therefore were protected by the statute; (2) her employer was aware she engaged in protected activity; and (3) her firing was motivated, at least in part, by the protected activity. *U.S. ex rel. Grant v. Thorek Hosp.*, 2008 WL 1883454, *3 (N.D. Ill. Apr. 25, 2008). Whether Plaintiff's accusations concerning an alleged "scam," from which Ms. Glowacki supposedly benefitted, were correct is not an element of the claim. *See Halasa v. ITT Educ. Servs., Inc.*, 2011 WL 4036516, *4 (S.D. Ind. Sept. 12, 2011), *aff'd,* 690 F.3d 844 (7th Cir. 2012) (observing False Claims Act ("FCA") retaliation plaintiff "does not have to prove … the underlying FCA violations actually occurred in order to succeed on his retaliation claim"); *Perez-United States and State of Ill. Ex rel. Grandeau v. Cancer Treatment Ctrs. Of Am.*, 2004 WL 755893, *1 (N.D. Ill. Feb. 24, 2004) (applying same legal analysis to FCA and IWRPA retaliation claims). Therefore, Plaintiff is not entitled to discovery concerning the merits of her purported belief that Ms. Glowacki's salary was the product of a "payroll scam."

While Plaintiff argues in the Motion that Ms. Glowacki was "similarly situated" to her, she does so in language relevant only to a pay discrimination claim, which she does not assert in this case, claiming they had equivalent job titles, job duties and years of service, and the same supervisor, but different pay. (Docket #60 at 12) The details of Ms. Glowacki's Board employment are not relevant to Plaintiff's claims in this case and the Court should deny her demand for that information, particularly given that Ms. Glowacki is an innocent third party not involved in this litigation.

## CONCLUSION

The Board respectfully requests that the Court deny Plaintiff's Motion and award the Board all other relief to which it may be entitled.

        Respectfully submitted,

        **BOARD OF EDUCATION OF THE CITY OF CHICAGO**

        JAMES L. BEBLEY, General Counsel

By:    s/*Lisa A. Dreishmire*
        Lisa A. Dreishmire
        Senior Assistant General Counsel
        Board of Education of the City of Chicago
        Law Department
        1 North Dearborn, Suite 900
        Chicago, Illinois 60602
        773-553-1700

## CERTIFICATE OF SERVICE

I certify that I caused this pleading to be served upon Plaintiff *pro se* by CM-ECF E-Filing pursuant to General Order on Electronic Case Filing, Section XI(C), on December 19, 2014.

        s/*Lisa A. Dreishmire*
        Lisa A. Dreishmire